THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| DAVID PENNER MD, PLLC, a Washington professional limited liability company, d/b/a/ OLYMPIA CENTER FOR TMS & PSYCHIATRY; DAVID PENNER, an individual,<br><br>     Plaintiffs,<br><br> vs.<br><br>CLEAR TMS+, PLLC, a Washington professional limited liability company; DIANA WILCOX, an individual; TMSTherapyNearMe.com, LLC, a Delaware limited liability company,<br><br>     Defendants. | No. 3:25-cv-05033- BHS<br><br>PLAINTIFFS' RESPONSE TO TMSTHERAPYNEARME.COM'S MOTION TO DISMISS |

## I.  RELIEF REQUESTED

Plaintiffs David Penner, M.D., and David Penner MD, PLLC, respectfully request that the Court deny Defendant TMSTherapyNearMe.com LLC's Motion to Dismiss, Dkt. 86. As the record amply demonstrates, this Defendant has merely "gone through the motions" of filing a federal district court motion to dismiss, and its rote objections to its inclusion in these proceedings are meritless and hardly worth the Court's time or consideration.

*First*, TMSTherapyNearMe.com argues this Court lacks subject matter jurisdiction over the claims against it. That argument fails, of course, because there is substantial factual overlap between Plaintiffs' claims against each Defendant, much less the mere "loose factual connection" necessary to establish federal subject matter jurisdiction. *Pacific Steel Group v. Commercial Metals Company*, 600 F. Supp. 3d 1056, 1079 (N.D. Cal. 2022).

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

*Second*, TMSTherapyNearMe.com contends that Plaintiffs failed to allege it purposefully directed any of its unlawful actions toward Washington state. This argument fails because it ignores Plaintiffs' numerous and specific allegations that this Defendant is fundamentally manipulating the market's lawful operation between TMS service providers and Washington consumers, and as a matter of its business model.

Finally, the directory contends that Plaintiffs failed to plausibly allege that it violated Washington law. But under the record of this case, TMSTherapyNearMe.com's arguments amount to nothing more than wishful thinking. Idiosyncratic optimism alone, of course, is insufficient to prevail under Rule 12(b)(6), and the Defendants Motion should be denied.

## II.    STATEMENTS OF FACT

### A.  Procedural History

Plaintiffs originally filed their lawsuit on January 14, 2025. *See* Dkt. 1 (Complaint). At the time of the action's filing, Plaintiffs asserted trademark-based claims for deceptive and misleading advertising under federal and Washington law against only Clear TMS+. *See generally id.* On January 15, 2025, Plaintiffs moved for a temporary restraining order "enjoining ClearTMS from using Dr. Penner and the Clinic's tradename/trademark in a misleading way in advertisements." Dkt. 3 at 1:1-3. On January 23, 2025, the Court entered its Minute Order denying Plaintiff's motion for emergency injunctive relief as well as Plaintiffs' "oral motion for expedited discovery." Dkt. 16.

Clear TMS filed its Answer to Plaintiffs' original Complaint on February 4, 2025. Dkt. 20. That same day, Plaintiffs filed a Motion for Reconsideration of the Court's January 23 Minute Order denying their request for a TRO, and arguing the following, among other things:

> Plaintiff petitioned this Court to restrain Clear's unfair and unlawful practices and ***orally moved for expedited discovery or leave to file such a motion to identify the owner/operator of TMS[Therapy]NearMe website, which currently deceives the public***.

Dkt. 21 at 1:18-27 (emphasis added). On February 10, 2025, the Court entered the following Order with respect to Plaintiffs' Motion for Reconsideration:

RESPONSE TO MOTION TO
DISMISS
- Page 2

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

> Penner contends that new evidence supports a TRO, ***and that the Court should permit it to subpoena non-party TMSTherapyNearMe.com on an expedited basis***. It is the Court's general practice to seek a response to a motion for reconsideration in most cases because it cannot grant such a motion unless the opposing party has an opportunity to respond. Local Civil Rule 7(h). The Court therefore requests defendant Clear TMS+ to respond to Penner's motion within 14 days. The Court will not entertain a reply.

Dkt. 23 at 1:15-22 (emphasis added).

Plaintiffs timely moved for leave to file a first amended pleading on May 16, 2025, seeking leave to add individual claims against Defendant Wilcox. *See* Dkt. 31. Included in Plaintiffs' moving papers at that time, under the heading, "New facts exhibiting Clear TMS use of Penner's name are relevant," *id.* at 3:1, Plaintiffs explained, "Paragraph 2.36 in the proposed amended complaint accounts for new facts apparent after the complaint was filed," including, "the presence of a third-party directory website, TMSTherapyNearMe[.com], which redirects interested patients away from Penner's clinic and toward Clear TMS+ when they inquire for a visit." *Id.* at 3:1-7; *see also* Dkt. 15 ¶¶ 2-6 (Alicia Carter's Declaration). The Court granted Plaintiffs' motion seeking leave to file their first amended complaint on June 26, 2025. Dkt. 40.

On July 7, 2025, Plaintiffs filed their (First) Amended Complaint (FAC), adding individual claims against Defendant Wilcox. Dkt. 41. Defendants Clear TMS and Wilcox timely filed their joint Answer to Plaintiffs' FAC on July 21, 2025. Dkt. 43. With respect to the FAC's new allegations regarding TMSTherapyNearMe.com, these Defendants answered as follows:

> Admitted that Clear TMS maintained a paid listing with TMS[Therapy]NearMe.com. Admitted that TMS[Therapy]NearMe.com is an unrelated third-party listing site for TMS providers. Defendants do not have firsthand knowledge of any inner workings of TMS[Therapy]NearMe.com and thus deny the remaining allegations. Defendants are without sufficient information and belief to admit or deny the remaining allegations, and so they are denied.

*Id.* at ¶ 2.36.

Plaintiffs deposed then-third-party TMSTherapyNearMe.com's corporate representative on October 10, 2025. Dkt. 55-1 (deposition transcript). TMSTherapyNearMe.com's representative made several significant admissions about the

RESPONSE TO MOTION TO DISMISS - Page 3

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

directory's operations during that virtual deposition. *See generally id.* The directory's representative's legally significant admissions include (but are not limited to) the following:

- TMSTherapyNearMe.com's directory website is misleading to consumers because the site's user interface gives consumers the false impression that their form-fill appointment requests to the website—which include consumers' confidential medical information—will be shared with only the consumers' specific TMS health care providers of choice;

- Whether that ends up being the case depends entirely upon whether a consumer's TMS provider of choice is a paid subscriber of TMSTherapyNearMe.com's website;

- If the consumer's TMS provider of choice is a paid directory subscriber (*e.g.*, Defendants Clear TMS and Wilcox), the consumer's form-fill appointment request is transmitted directly to (and only to) that consumer's TMS provider of choice;

- If the consumer's TMS provider of choice is not a paid subscriber (*e.g.*, Plaintiffs), the consumer's form-fill appointment request is instead transmitted to TMSTherapyNearMe.com's employees, who work behind the scenes to share the consumer's private medical information and appointment request with paid-subscriber TMS providers in the same locale as the consumer's non-subscribing provider of choice;

- In the meantime, TMSTherapyNearMe.com's employees make only perfunctory efforts to contact the consumer's non-subscribing TMS provider of choice about the consumer's specific attempts to use the directory to schedule a medical appointment with that provider, using long-stale contact information scrubbed from the internet in 2019; and

- TMSTherapyNearMe.com's employees actively solicit for directory subscriptions any TMS providers who contact the directory or who receive and respond to this Defendant's "drip campaign" solicitations to directory-listed but non-subscribing TMS providers.

*See, e.g.*, id. at 26:8-27.3; 36:8-37:23; 38:15-17; 40:14-18; 49:17-25; 52:25-53:3; 60:2-25.

On November 11, 2025, Plaintiffs filed their motion seeking leave to file their Second Amended Complaint ("SAC"), adding Washington state law Consumer Protection Act claims against TMSTherapyNearMe.com. Dkt. 54. The Court granted Plaintiffs' motion to add TMSTherapyNearMe.com on December 16, 2025. Dkt. 69. The Court's Order reasoned, in relevant part, that "Penner . . . argues that if amendment is denied, he will commence a new action against TMSTherapy, and the cases will likely be consolidated as related. The Court agrees." *Id.* at 2:17-19.

RESPONSE TO MOTION TO
DISMISS
- Page 4

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

**B. Plaintiffs' Allegations Against TMSTherapyNearMe.com LLC**

Plaintiffs' SAC alleges, in relevant part, the following. First, Plaintiff David Penner, through his company, David Penner MD, PLLC, operates a clinic specializing in transcranial magnetic stimulation ("TMS") in Thurston County, Washington. Dkt. 74 ¶¶ 2.1-2.2. Conversely, Defendant Clear TMS+ operated a directly competing clinic in Thurston County. *Id.* ¶ 2.3. For its part, "TMSTherapyNearMe.com, LLC is a Delaware limited liability company doing business throughout the country, including in the state of Washington," and its two members, Suzanne Jessee and Breanna Splain, are California residents and citizens. Dkt. 74 ¶ 1.4.

As Plaintiffs have alleged since this case's inception, "Clear TMS engaged Defendant TMSTherapyNearMe.com for marketing. TMSTherapyNearMe.com is an online directory of health care providers who treat patients using TMS. At the crux of Plaintiffs' case against Defendant TMSTherapyNearMe.com is its unfair and deceptive business practice of running a TMS therapy 'pay to play' scheme." *Id.* ¶ 2.34. "TMSTherapyNearMe.com does so by maintaining an extensive online directory of TMS health care providers (based on contact information the directory's programmers scrubbed from the Web) and then surreptitiously diverting online consumers who are specifically interested in obtaining services from TMS providers who do maintain a paid subscription to MSTherapyNearMe.com away from non-subscribing TMS providers and toward TMS providers who do pay this Defendant's subscription fees, like Defendants Clear TMS and Wilcox did during the relevant period." *Id.* ¶ 2.35.

"TMSTherapyNearMe.com's directory covers all 50 states, and this Defendant claims to include in its online directory entries for the majority of the nation's TMS health care providers, including entries for Plaintiffs and Defendants Clear TMS+ and Wilcox." *Id.* ¶ 2.36. "Inclusion within TMSTherapyNearMe.com's online directory for TMS health care providers is not a voluntary, opt-in proposition for the providers. Instead, this Defendant includes within its online directory individual directory entries for any TMS health care provider with contact information posted online (and thus available to be 'scrubbed' from the Web by the Defendant's employees and vendors)." *Id.* ¶ 2.37. "Most of the provider entries on TMSTherapyNearMe.com's online

RESPONSE TO MOTION TO
DISMISS
- Page 5

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

directory include contact information that the directory scrubbed from the Web back in 2019, and which it has made no systematic efforts to update in the years since." *Id.* ¶ 2.38. "TMSTherapyNearMe.com's aggregation of TMS health care providers and their contact information is extensive, constituting many thousands of providers offering TMS services." *Id.* ¶ 2.39.

"In the state of Washington alone, TMSTherapyNearMe.com's directory entries are broken down by city into 33 geographical subdivisions, almost all of which include directory listings for multiple, competing TMS health care providers." *Id.* ¶ 2.40. "For example, the directory's subdirectory for TMS providers in Olympia, Washington, contains 45 separate provider entries, including multiple entries related to Plaintiffs and their staff (e.g., David Penner MD PLLC and Olympia Center for TMS and Psychiatry)." *Id.* ¶ 2.41. "TMSTherapyNearMe.com has created an unfair, unlawful, and anti-competitive 'pay-to-play' scheme through its directory's subscription services." *Id.* ¶ 2.42. "Under this scheme, whether this Defendant's online directory of TMS health care providers (which by all outward appearances seems to provide consumers with impartial, objectively managed directory services) actually assists Washington consumers with contacting and coordinating healthcare with their TMS providers of choice depends almost exclusively upon whether those providers are paid subscribers of TMSTherapyNearMe.com." *Id.*

"TMSTherapyNearMe.com's online directory is unlawfully misleading to a reasonable Washington consumer because the website intentionally presents information to consumers that creates a misleading consumer impression and expectation about how the website directs (or does not direct) the consumer's form-fill personal healthcare information to their directory-listed TMS provider(s) of choice, depending upon that provider's subscription status." *Id.* ¶ 2.43. "When a consumer navigates to the directory's listing page for a specific TMS provider (e.g., Dr. Penner), the prospective patient is asked to complete a form to schedule an appointment, which is located immediately beneath the specific provider's listed name and contact information page on the online directory. That online form includes requests for the consumer's private healthcare information." *Id.* ¶ 2.44.

"The obvious inference to a reasonable consumer is that by completing the online form, the consumer is specifically submitting an appointment request to the consumer's provider of choice named on that individual provider's directory page, whose contact information is listed immediately above the completed form." *Id.* ¶ 2.45. "Unbeknownst to consumers, whether TMSTherapyNearMe.com in fact delivers the consumers' online form-fill appointment requests to the consumers' indicated providers of choice depends on whether those individual providers are paid subscribers of TMSTherapyNearMe.com (and, like Plaintiffs, most TMS providers are not). *Id.* ¶ 2.46. "That is because TMSTherapyNearMe.com's pay-to-play directory scheme rewards its paid subscribers by specifically directing online consumer traffic away from non-subscriber TMS providers (e.g., Plaintiffs) and toward their TMS-provider competitors who do pay for a directory subscription (e.g., as Defendants Clear TMS and Wilcox formerly did)." *Id.* "TMSTherapyNearMe.com provides its paid subscribers (and only its paid subscribers) with exclusive access to any consumer's form-fill appointment requests made by a given consumer on Defendant's directory's entry page for that specific subscribing provider." *Id.* ¶ 2.48.

"Consumers who reach the TMSTherapyNearMe.com directory entry of a TMS health care provider who is a paid subscriber are directed by the website to complete a data form and appointment request located beneath the name and contact information of the TMS provider." *Id.* ¶ 2.49. "Once the consumer submits the completed form-fill appointment request, TMSTherapyNearMe.com's website transmits that data directly to the paid subscriber's designated and verified email address." *Id.* ¶ 2.50. "This is in line with reasonable consumer expectations about where their data will go after completing a data form and appointment request on a specific TMS provider's directory page on the Defendant's website." *Id.* ¶ 2.51.

"On the other hand, TMSTherapyNearMe.com disadvantages non-subscribing TMS health care providers by directing consumer traffic away from their businesses and toward their closest directory-subscribing competitors." *Id.* ¶ 2.50. "To that end, consumers who reach the TMSTherapyNearMe.com directory entry of a TMS health care provider who does not pay for a subscription are asked by the website to complete the same appointment request data form

RESPONSE TO MOTION TO
DISMISS
- Page 7

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

presented on the directory entry pages of TMS providers who do have a paid subscription." *Id.* ¶ 2.53. "However, when consumers submit their form-fill appointment request from the directory entry of a non-subscribing TMS provider, their information (including private healthcare information) is not submitted directly to their TMS providers of choice." *Id.* ¶ 2.54. "Instead, the consumers' form-fill information is transmitted to TMSTherapyNearMe.com's employees and contractors, who work behind the scenes to redirect consumers seeking TMS services from their non-directory-subscriber TMS providers of choice to any paying-subscriber TMS providers in the geographic area." *Id.* ¶ 2.55. Sometimes, the directory's employees belatedly attempt to transmit consumer inquiries to their non-subscribing TMS providers of choice, but only after the directory first alerts that provider's two closest directory-subscribing competitors of the directory's purportedly legitimate business "lead" on the interested consumers." *Id.* ¶ 2.56.

"In any event, TMSTherapyNearMe.com has not systematically updated the directory's listed contact information for non-subscribing TMS providers in nearly seven years; that contact information is largely stale, with the predictable result being that this Defendant's token efforts to apprise non-subscribing providers of consumer interest in their specific services generally fail." *Id.* ¶ 2.57. "On the occasions when TMSTherapyNearMe.com's perfunctory efforts to contact non-subscribing TMS providers (often using stale contact information) succeed, TMSTherapyNearMe.com's employees parlay any resulting conversation with those providers into solicitation opportunities, during which the directory's employees explain to the TMS providers (including Washington providers) the unfair and misleading advantage the directory provides its paid subscribers (to the detriment of subscribers' nearby non-subscriber competitors)." *Id.* ¶ 2.58.

"As a result, many (if not most) non-subscribing TMS health care providers in Washington (and there are scores, including Plaintiffs) have not (and will not) receive any correspondence from TMSTherapyNearMe.com regarding potential leads (i.e., consumers who filled out the directory's form-fill data sheet beneath a specific non-subscribing TMS provider's TMSTherapyNearMe.com directory posting), even though their closest competitors will receive

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

those same leads so long as they are paid directory subscribers." *Id.* ¶ 2.59. "Plaintiffs and their agents have on multiple occasions attempted to submit form-fill appointment requests to TMSTherapyNearMe.com, specifically seeking TMS appointments with either Dr. Penner or the Clinic (neither of whom is a paid subscriber of TMSTherapyNearMe.com)." *Id.* ¶ 2.61. "When Dr. Penner filled out a form-fill data sheet on TMSTherapyNearMe.com seeking TMS services from himself, neither he nor the Clinic received any correspondence regarding this 'lead' from TMSTherapyNearMe.com." *Id.* ¶ 2.62. "Instead, Dr. Penner was immediately contacted by the Clinic's competitors (e.g., Defendants Clear TMS, Wilcox, and another directly competing non-party operator of TMS clinics, Neurostim), who offered Plaintiffs TMS therapy services." *Id.* ¶ 2.63.

"Each Defendant was fully aware and understood that the arrangement between the Defendants would provide Defendants Clear TMS and Wilcox with opportunities to preemptively capture Plaintiffs' prospective clients." *Id.* ¶ 2.64. "TMSTherapyNearMe.com informs its subscribers (e.g., Clear TMS and Wilcox) of its business practices vis-à-vis their non-subscribing competitors (e.g., Plaintiffs), including the anticompetitive, unfair, misleading, and deceptive business practices the directory employs in its purportedly objective services as an ethically operating and objective online directory for TMS services." *Id.* ¶ 2.65. "Plaintiffs have been economically injured by TMSTherapyNearMe.com in the form of, among other things, Plaintiffs' prospective patients being unfairly and deceptively redirected and diverted by TMSTherapyNearMe.com away from seeking care from Plaintiffs and toward receiving care from Defendants Clear TMS, Wilcox, and other Washington TMS businesses with which Plaintiffs directly compete, like Neurostim." *Id.* ¶ 2.66.

"TMSTherapyNearMe.com's unfair and deceptive acts and practices through its online directory services are likely to harm both Washington consumers and other competing TMS providers." *Id.* ¶ 2.67. "These unlawful acts and practices deceive and mislead consumers because any reasonable consumer who completes and submits TMSTherapyNearMe.com's patient data form and appointment request on the directory's page for a specific TMS provider

RESPONSE TO MOTION TO DISMISS
- Page 9

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

has a reasonable expectation that their confidential health information and request for services are going to be shared with his or her provider of choice (and only that provider)." *Id.* ¶ 2.68. "Consumers are unaware of the fact that their reasonable expectation of privacy and confidentiality will be respected by TMSTherapyNearMe.com only if the TMS provider at issue pays for a directory subscription but will be betrayed if the provider is not a paying subscriber." *Id.* ¶ 2.69.

"Specifically, TMSTherapyNearMe.com will instead share those consumers private medical information with one or more nearby subscribing competitors of the consumers preferred (but non-subscribing) TMS providers." *Id.* ¶ 2.70. "The net result is that TMSTherapyNearMe.com subverts consumer choice and interferes with the competitive market for TMS therapy services to favor its paid subscribers and disfavor its unpaid subscribers." *Id.* ¶ 2.71. "In the process, TMSTherapyNearMe.com has also injured (and will continue injuring) all non-subscribing TMS health care providers in the state of Washington (including Plaintiffs) by virtue of how its website and business model operate unless and until this Defendant is enjoined." *Id.* ¶ 2.72.

"Further, TMSTherapyNearMe.com actively solicits Washington consumers seeking TMS healthcare services from Washington providers. This Defendant has a sophisticated understanding of search engine optimization (SEO) and has deployed its savvy to become one of the highest-ranking Google search results for consumers searching for 'TMS therapy providers near me.'" *Id.* ¶ 2.73. "Any Washington consumer using Google to search for TMS providers will probably come across, and will likely utilize, TMSTherapyNearMe.com's unfair and misleading online directory." *Id.* ¶ 2.74. "Dr. Penner and the Clinic rely on consumers' knowledge of Dr. Penner's name when consumers are searching for a psychiatrist online." *Id.* ¶ 2.75. "Neither the Clinic nor Dr. Penner authorized Clear TMS's or TMSTherapyNearMe.com's use of their names." *Id.* ¶ 2.76. "Clear TMS's and TMSTherapyNearMe.com's acts have caused and will continue to cause consumers to be diverted away from the Clinic's website, resulting in

RESPONSE TO MOTION TO
DISMISS
- Page 10

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

a loss of an indeterminable amount of business while Clear TMS gains valuable traffic across its website." *Id.* ¶ 2.77.

### C. Evidence Regarding the Court's Jurisdiction over TMSTherapyNearMe.com

In addition to the foregoing allegations from Plaintiffs' SAC, Plaintiffs also obtained (and, for the most part, have already filed) substantial third-party discovery establishing this Court's exercise of personal jurisdiction over TMSTherapyNearMe.com. To start with, this defendant's online directory operates by assembling listings of providers so that it can provide rankings in "particular geographical area[s]." (Ex. 1 to Declaration of Arthur Simpson at 18:18-19). In Plaintiff Penner's own Olympia, Washington region, TMSTherapyNearMe.com lists 45 providers. SAC ¶ 2.41. TMSTherapyNearMe.com has 33 subregions within Washington alone, to further organize its extensive network in the State of Washington. *Id.* ¶ 2.40.

Defendant Wilcox first engaged TMSTherapyNearMe.com via email on or about December 4, 2024, when she purchased a 90-day "Standout Listing" subscription from the directory. *See* Exs. 2 & 3 to Simpson Decl. According to TMSTherapyNearMe.com, the directory lists both subscribed and placeholder (free) listings. Ex. 1 to Simpson Decl. at 25:2-6. Subscribed listings require an interested TMS clinic to purchase a subscription from the directory. Placeholder listings, on the other hand, are those that no directory-subscriber clinic has claimed. They appear as profiles representing specific TMS Clinics, often including their address, and are created by TMSTherapyNearMe.com without the consent or knowledge of those clinics' owners. *See* Declaration of David Penner. at ¶ 2.

The directory creates them because it "needs to have listings of every clinic [it] can possibly find." Ex. 1 to Simpson Decl. at 25:10-11. Suzanne Jessee, CEO of TMSTheraphyNearMe.com, admits that such placeholder listings "don't really have an advantage to themselves" but rather function to support her company's directory. Ex. 1 to Simpson Decl. at 18:22-23; 25:14-15. According to TMSTherapyNearMe.com's, such nonconsensual "placeholder" listings provide data for TMSTherapyNearMe.com's "in-house people to see who's in that area," so they can refer patient leads to subscriber clinics in their

general proximity. *Id* at 18:23-25. The directory can list any number of clinics in a specific region, and, under its current model, it places its paid subscribers at the top. In the Olympia, Washington zip-code, for example, TMSTherapyNearMe.com currently recommends five "standout" listings out of 38 other clinics it has listed. Simpson Decl. at ¶5.

Potential TMS patients can use TMSTherapyNearMe.com in two major ways, both of which solely benefit subscriber clinics like Clear TMS + and mislead patients seeking care from non-subscribing clinics, like Plaintiffs. There are "general form fills" on the website where patients can seek TMS services near their location without specifying a specific provider or clinic of choice. Ex. 1 to Simpson Decl. at 16:6-17:6. These general forms are sent "in house" where they are then referred to three clinics. TMSTherapyNearMe.com curates which three clinics it refers the prospective patient to based on its knowledge of the location of its nearest subscriber clinics. *Id* at 16:23-17:6.

Alternatively, potential patients can fill out a form on a particular clinic's listing for both subscriber and non-subscriber clinics (i.e., those with a "placeholder" listing). *Id* at 17:17-18; 36:9-10. When a consumer navigates to the directory's listing page for a specific TMS provider (e.g., Dr. Penner), the prospective patient is asked to complete a form to schedule an appointment with that provider, which form is located immediately beneath the specific provider's listed name and contact information page on the online directory. Dkt. 74 ¶ 2.44.

If this clinic is a directory subscriber, the potential lead will be sent directly to the subscriber clinic. Ex. 1 to Simpson Decl. at 17:17-22. However, if the prospective patient has filled out a form under a "placeholder" listing for a non-subscriber clinic, the form goes "directly in house" rather than "directly to that clinic." *Id* at 18:13-14. In fact, when the directory's in-house team makes its referral, it may not reach the consumer's preferred clinic at all. *Id* at 19:21-23. The directory admits that it gives paying clinics "preferential consideration" in referrals "because they are subscribers," even when a client "didn't go directly to their location." *Id* at 20:8-10. Despite placeholder listings appearing to lead potential patients to fill out forms directed to their TMS clinic of choice, this generally will not be the case. Only subscriber clinics receive

RESPONSE TO MOTION TO DISMISS
- Page 12

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

"exclusive patient leads." *Id* at 17:23-24. Though they may attract potential patients seeking care from a specific clinic, clinics with placeholder listings may never see the potential lead. TMSTherapyNearMe.com has complete discretion to assign leads to referrals and divert patients to its subscribers.

Defendant Wilcox's clinic received contact information for at least three separate patient "leads" directly from TMSTherapyNearMe.com between December 30, 2024, and January 22, 2025. Ex. 4 to Simpson Decl. For example, on January 31, 2025, TMSTherapyNearMe.com sent Defendant Wilcox a purported patient lead from a Washington consumer who filled out a form requesting an appointment with a nearby clinic, Genuine Health Care PLLC. Ex. 4 to Simpson Decl. According to TMSTherapyNearMe.com, "most individuals fill out form on the centers that are closest to them." With its apparent familiarity with Defendant Wilcox's geographic market and nearest competitors, the directory identified that the "inquired center is 7 miles from their zip – your center is 7.4 miles away." *Id*. Nevertheless, the directory took the initiative to contact the prospective patient and ask if they were open to receiving TMS treatment with another clinic, ostensibly, a subscriber clinic like Clear TMS +, instead of the clinic they believed they had contacted by submitting the director's form. *Id.*

Dr. Penner experienced TMSTherapyNearMe.com's deception from both the consumer and clinic perspectives in December 2024. On or about December 2, 2024, Dr. Penner located his own clinic's unpaid "placeholder" listing on the TMSTherapyNearMe.com directory. Penner Decl. at ¶3. He completed the directory's form-fill data sheet immediately below his listing, simulating a consumer seeking services from his own clinic. Later that day, he received an email from TMSTherapyNearMe.com's "Clinic Account Specialist" saying that the directory was "unable to reach David Penner MD PLLC." Ex. 2 to Penner Decl. Instead, the directory sent Dr. Penner's request for an appointment with his own TMS clinic to a nearby competing clinic with a paid directory subscription, NeuroStim TMS Centers in Lacey, Washington. *Id*. In the meantime, Dr. Penner never received any correspondence from TMSTherapyNearMe.com about the potential "lead" he had submitted to the directory requesting his own services. However, he

RESPONSE TO MOTION TO
DISMISS
- Page 13

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

did receive multiple emails from NeuroStim asking him to schedule a preliminary meeting or phone conversation to establish care. Penner Decl. at ¶5.

Dr. Penner watched the same deception play out again in January 2025, when a friend of his, Alicia Carter, attempted to contact Plaintiff's clinic through TMSTherapyNearMe.com's website. Dkt. 15 at ¶4. After locating a listing for Dr. Penner's clinic on the TMSTherapyNearMe.com directory, she completed the "Contact Us or Book an Appointment Form" attached to the listing. Dkt. 15-1 at p.2. The next day, she received an email from Clear TMS+, and an hour later, a phone call from Clear TMS+. Dkt. 15 at ¶5. The email offered to schedule a consultation or schedule a new patient appointment. Dkt. 15-2. Despite completing a form that appeared to send submissions directly to Dr. Penner's clinic, Ms. Carter's information ended up in the hands of Clear TMS +. According to Ms. Jessee, Ms. Carter "wasn't wrong in assuming" she was submitting a form to Dr. Penner; however, "if you do not have a preferred…paid-for listing, you are not guaranteed exclusive leads." *Id* at 37:13-16.

### III.    ARGUMENT

#### A. The Court Should Deny the 12(b)(1) Motion.

TMSTherapyNearMe.com's Motion leads with the argument that Plaintiffs' Washington state law claims and allegations against it are not "part of the same Article III 'case or controversy'" as Plaintiffs' claims against Defendants CLEAR TMS+ and Wilcox. Dkt. 86 at 12:20-19:13.

Under prevailing federal law, however, "[t]ypically, a 'loose factual connection between the claims' will satisfy § 1367(a)." *Pacific Steel Group v. Commercial Metals Company*, 600 F. Supp. 3d 1056, 1079 (N.D. Cal. 2022). As another district court within the Ninth Circuit previously explained, "Claims that arise from the same 'transaction or occurrence' undoubtedly share a 'common nucleus of operative fact,' but the common nucleus test is broader than that: it 'requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection.'" *Los Angeles Press Club v. City of Los Angeles,* 799 F. Supp. 3d 1007, 1022 (C.D. Cal. 2025) (citing *Elements Spirits, Inc. v. Iconic Brands, Inc.*, No. 15-cv-02692-DDP-AGRx,

RESPONSE TO MOTION TO DISMISS
- Page 14

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

2015 WL 5470297, at *4 (C.D. Cal. Sept. 17, 2015); *Pac. Steel Grp*, 600 F. Supp. 3d at 1079 ; 13 Wright & Miller's *Federal Practice & Procedure* § 3567.1 (3d ed. 2025)).

Here, there is more than a "loose factual connection" between Plaintiffs' claims against Defendants CLEAR TMS+ and Wilcox and those against TMSTherapyNearMe.com. Indeed, there is direct factual overlap because Plaintiffs have, from the commencement of this case, maintained that the CLEAR Defendants' usage of TMSTherapyNearMe.com's pay-to-play directory was unfair and deceptive under the law. Therefore, the Court has obvious supplemental jurisdiction over Plaintiffs' claims against TMSTherapyNearMe.com.

Indeed, it would constitute an abuse of the Court's discretion to decline to exercise its subject matter jurisdiction over Plaintiffs' overlapping claims against TMSTherapyNearMe.com, at least so long as Plaintiffs' federal claims remain pending. *See Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000, (9th Cir. 1997) ("That state law claims 'should ' be dismissed if federal claims are dismissed before trial. . . has never meant that they must be dismissed. Even more clearly under the statutory scheme, while courts 'shall' have supplemental jurisdiction under § 1367(a), they 'may' decline to exercise it under § 1367(c).") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720, 730 n. 7 (1988); *Schneider v. TRW, Inc.*, 938 F.2d 986, 995 (9th Cir.1991)).

Moreover, "even if [this] district court had the authority to exercise discretion and decline jurisdiction, it [would] not further the objectives of fairness and efficiency to do so." *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003). That is because there is complete diversity between Plaintiffs and TMSTherapyNearMe.com, and as this Court previously (and adroitly) noted, "Penner . . . argues that if amendment is denied, he will commence a new action against TMSTherapy, and the cases will likely be consolidated as related." Dkt. 69. 2:17-19.

The practical upshot is that, were this Court to grant TMSTherapyNearMe.com's instant Motion, Plaintiff would merely file an independent lawsuit against it under the Court's diversity

RESPONSE TO MOTION TO DISMISS
- Page 15

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

jurisdiction and then seek to consolidate the two related actions. *See, e.g.*, 13D Richard D. Freer, *Fed. Prac. & Proc. Juris.* § 3567.1 (3d ed.)("if one concludes that a claim satisfies the "transaction or occurrence" test of one of the Civil Rules, it will satisfy § 1367(a)"). That is not a more efficient outcome, and the Court should reject this Defendant's invitation to a time-wasting misadventure.

## B. The Court Should Deny the 12(b)(2) Motion.

Equally specious is TMSTherapyNearMe.com's contention that Plaintiffs failed to adequately allege that it "committed an intentional act, expressly aimed at the forum, causing harm the defendant knows is likely to be suffered there." Dkt. 86 at 20:5-11. For reference, "Plaintiffs have the burden of demonstrating that the Court may exercise personal jurisdiction over defendants." *Hawes v. Kabani & Co., Inc.*, 182 F. Supp. 3d 1134, 1138 (W.D. Wash. 2016). "Where . . . the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). While a plaintiff cannot rest on bare allegations, "uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[Courts] may not assume the truth of allegations in a pleading which are contradicted by affidavit, but [must] resolve factual disputes in the plaintiff's favor." *Id.*

Here, Plaintiffs do not claim that TMSTherapyNearMe.com is subject to general jurisdiction in Washington. Instead, Plaintiffs contend that the record establishes (in spades) that this defendant purposefully directed its unlawful conduct toward this state. To that end, the Ninth Circuit applies a three-prong test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

First, the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum. *Id.* Second, the claims must arise out of the defendant's forum-related activities. Finally, the exercise of jurisdiction must be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068

RESPONSE TO MOTION TO
DISMISS
- Page 16

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

(9th Cir. 2017). Plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger*, 374 F.3d at 802. The burden then shifts to the defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* "To show purposeful direction, a plaintiff must sufficiently allege that the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) that caused harm the defendant knows is likely to be suffered in the forum state." *Dole Food*, 303 F.3d at 1111. "One contact . . . can be enough, especially when that one contact is the act that forms the basis for the tort allegation." *DBSI Signature Place, LLC v. BL Greensboro*, L.P., 392 F. Supp. 2d 1206, 1215 (D. Idaho 2005). "[T]he defendant need not have been physically present in the jurisdiction to conduct the activity giving rise to the cause of action. [T]he Supreme Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the foreign state is the 'purposeful direction' of a foreign act having effect in the forum state." *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990).

*Intentional Act.* The first element—an "intentional act"— is satisfied. *Dole*, 303 F.3d at 1111. TMSTherapyNearMe.com's directory is the probable first stop for Washington consumers seeking TMS therapy services. To that end, the directory has carved up Washington into 33 subregions on its website, and in each, TMSTherapyNearMe.com seeks to interfere with the free and informed choices of Washington consumers by directing them away from non-subscribing TMS providers in their immediate Washington environs and instead toward the nearest Washington-based TMS provider with a paid directory subscription.

*Expressly Aimed.* Under the second part of the specific personal jurisdiction test, a plaintiff must show that the claim asserted in the litigation "arises out of or relates to the defendant's forum-related activities." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). This requirement is satisfied "when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Dole*, 303 F.3d at 1111 (citations omitted). Here, Plaintiffs' uncontroverted allegations and evidence also establish this requirement. Specifically, Plaintiffs demonstrate that TMSTherapyNearMe.com is intentionally manipulating the Washington market for TMS

services to favor subscribers like Wilcox to the disadvantage of non-subscribers like Plaintiffs. *Dole*, 303 F.3d at 1112 ("Because [defendants] knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers, we conclude that their actions were 'expressly aimed' at the forum state."); *see also Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (finding this element satisfied where, but for a letter sent to plaintiff in the forum state, the plaintiff would not have had to file suit against an out-of-state defendant

***Causing Harm Likely to be Suffered in the Forum State***. "In determining the situs of a corporation's injury . . . a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Mavrix*, 647 F.3d at 1231 (quoting Dole, 303 F.3d at 1113). In this case, TMSTherapyNearMe.com is intentionally interjecting itself (and through deceptive means) into the prospective patient-client relationships between Washington consumers seeking TMS services and their specific Washington TMS providers of choice. In other words, TMSTherapyNearMe.com is knowingly causing harm within Washington state because that is its very business model. *See Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989) ("The fact that there was no physical contact with California and that [defendants'] actions all took place in Florida would not relieve them of personal jurisdiction where the effects of their Florida conduct were felt in California.").

***Reasonableness***. The reasonableness requirement "places upon the defendant the burden of demonstrating unreasonableness and requires the defendant to put on a 'compelling case.'" *Bancroft & Masters*, 223 F.3d at 1088. Here, this Defendant argues only that "Washington's interest in adjudicating claims against a California-based directory is diminished where Plaintiffs plead a nationwide business model rather than Washington-specific conduct." Dkt. 86 at 23:12-24. In other words, this Defendant argues (without citation to authority) that Washington's legal

RESPONSE TO MOTION TO DISMISS
- Page 18

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

interest in this state is diminished because the Defendant is harming consumers and businesses nationwide. As the Defendants' lack of authority intimates, that is a factor favoring this Court's exercise of jurisdiction, not militating against that exercise.

**C. The Court Should Deny the Individual Defendants' 12(b)(6) Motion.**

Finally, TMSTherapyNearMe.com argues (without citation to authority), "Where, as here, Plaintiffs' CPA theory rests on alleged deception by implication, it must at a minimum satisfy Rule 8's plausibility standard by pleading nonconclusory facts showing what the website communicated (or failed to disclose) and why a reasonable consumer would likely be misled." Dkt. 86 at 25:19-23. Plaintiffs have provided those very allegations, and in abundance. But, for reference, here is the applicable legal standard.

District courts will grant a motion to dismiss only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). When considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021).

The Court is also familiar with the five elements required for a WCPA claim, including the requirements of an "unfair or deceptive act or practice" that "impacts the public interest." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). In regard to the latter, courts consider four non-dispositive factors: (1) whether the alleged acts were committed in the course of defendant's business; (2) whether the defendant advertised to the public in general; (3) whether the defendant actively solicited this plaintiff, indicating potential solicitation of others; (4) whether the plaintiff and defendant have unequal bargaining positions. *Id.* at 790-91. "The Washington CPA prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]'" *Amazon.com Servs. LLC v. Paradigm Clinical Research Inst., Inc.*, 2:21-CV-00753, 2024 WL 1345197, at *6 (W.D. Wash.

RESPONSE TO MOTION TO DISMISS
- Page 19

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

Mar. 29, 2024) (quoting RCW 19.86.020). "To prevail on a CPA claim, Plaintiff must show: (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Id.* (citing *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1107 (Wash. 2015)). "The CPA 'shall be liberally construed [so] that its beneficial purposes may be served.'" *Id.* (quoting RCW 19.86.920).

"Regarding the first element, 'the CPA does not define "unfair" or "deceptive," so the Washington Supreme Court has allowed the definitions to evolve through a gradual process of judicial inclusion and exclusion.'" *Id.* at * 7 (quoting *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1161 (W.D. Wash. 2017)) (cleaned up). "Either an unfair or a deceptive act can be the basis for a CPA claim." *Veridian*, 295 F. Supp 3d at 1161. "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009). "Stated differently, '[a] deceptive act or practice is measured by "the net impression" on a reasonable consumer.'" *Paradigm Clinical Research Inst.*, 2024 WL 1345197, at *6 (quoting *Washington v. Mandatory Poster Agency, Inc.*, 398 P.3d 1271, 1277 (2017)).

"A CPA plaintiff may establish that an alleged unfair or deceptive act or practice is injurious to the public interest in one of three ways, including when it '(a) [i]njured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.'" *Paradigm Clinical Research Inst.*, 2024 WL 1345197, at *7 (quoting RCW 19.86.093(3)(a)). In determining whether a plaintiff's claims implicate the public interest, they look to five non-exclusive factors:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

RESPONSE TO MOTION TO DISMISS
- Page 20

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

*Id.* (citing *Hunt v. Medtronic USA, Inc.*, 627 F. Supp. 3d 1188, 1196 (W.D. Wash. 2022); *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009)).

Under the record of this case, TMSTherapyNearMe.com is an exercise in misdirection against the Court, as opposed to a serious argument. By mere way of example, Plaintiffs' SAC includes the following allegations that nullify this Defendant's contentions:

- "TMSTherapyNearMe.com does so by maintaining an extensive online directory of TMS health care providers . . . and then surreptitiously diverting online *consumers* who are specifically interested in obtaining services from TMS providers who do maintain a paid subscription to TMSTherapyNearMe.com away from non-subscribing TMS providers and toward TMS providers who do pay this Defendant's subscription fees[.]" *Id.* ¶ 2.35.

- "Under this scheme, whether this Defendant's online directory of TMS health care providers (which by all outward appearances seems to provide *consumers* with impartial, objectively managed directory services) actually assists *Washington consumers* with contacting and coordinating healthcare with their TMS providers of choice depends almost exclusively upon whether those providers are paid subscribers of TMSTherapyNearMe.com." *Id.*

- "TMSTherapyNearMe.com's online directory is unlawfully misleading to a reasonable *Washington consumer* because the website intentionally presents information to *consumers* that creates a misleading *consumer* impression and expectation about how the website directs (or does not direct) *the consumer's* form-fill personal healthcare information to their directory-listed TMS provider(s) of choice, depending upon that provider's subscription status." *Id.* ¶ 2.43.

- "When *a consumer* navigates to the directory's listing page for a specific TMS provider (e.g., Dr. Penner), the prospective patient is asked to complete a form to schedule an appointment, which is located immediately beneath the specific provider's listed name and contact information page on the online directory. That online form includes requests for *the consumer's* private healthcare information." *Id.* ¶ 2.44.

RESPONSE TO MOTION TO
DISMISS
- Page 21

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

- "The obvious inference to *a reasonable consumer* is that by completing the online form, *the consumer* is specifically submitting an appointment request to the consumer's provider of choice named on that individual provider's directory page, whose contact information is listed immediately above the completed form." *Id.* ¶ 2.45.

- "Unbeknownst to *consumers*, whether TMSTherapyNearMe.com in fact delivers the *consumers'* online form-fill appointment requests to the *consumers'* indicated providers of choice depends on whether those individual providers are paid subscribers of TMSTherapyNearMe.com (and, like Plaintiffs, most TMS providers are not). *Id.* ¶ 2.46.

- "That is because TMSTherapyNearMe.com's pay-to-play directory scheme rewards its paid subscribers by specifically directing online *consumer* traffic away from non-subscriber TMS providers (e.g., Plaintiffs) and toward their TMS-provider competitors who do pay for a directory subscription (e.g., as Defendants Clear TMS and Wilcox formerly did)." *Id.*

- "TMSTherapyNearMe.com provides its paid subscribers (and only its paid subscribers) with exclusive access to any *consumer's* form-fill appointment requests made by a given consumer on Defendant's directory's entry page for that specific subscribing provider." *Id.* ¶ 2.48.

- "*Consumers* who reach the TMSTherapyNearMe.com directory entry of a TMS health care provider who is a paid subscriber are directed by the website to complete a data form and appointment request located beneath the name and contact information of the TMS provider." *Id.* ¶ 2.49.

- "Once the *consumer* submits the completed form-fill appointment request, TMSTherapyNearMe.com's website transmits that data directly to the paid subscriber's designated and verified email address." *Id.* ¶ 2.50. "

- This is in line with *reasonable consumer* expectations about where their data will go after completing a data form and appointment request on a specific TMS provider's directory page on the Defendant's website." *Id.* ¶ 2.51.

RESPONSE TO MOTION TO DISMISS - Page 22

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

- "On the other hand, TMSTherapyNearMe.com disadvantages non-subscribing TMS health care providers by directing *consumer* traffic away from their businesses and toward their closest directory-subscribing competitors." *Id.* ¶ 2.50.

- "To that end, *consumers* who reach the TMSTherapyNearMe.com directory entry of a TMS health care provider who does not pay for a subscription are asked by the website to complete the same appointment request data form presented on the directory entry pages of TMS providers who do have a paid subscription." *Id.* ¶ 2.53. "However, when *consumers* submit their form-fill appointment request from the directory entry of a non-subscribing TMS provider, their information (including private healthcare information) is not submitted directly to their TMS providers of choice." *Id.* ¶ 2.54.

- "Instead, the *consumers'* form-fill information is transmitted to TMSTherapyNearMe.com's employees and contractors, who work behind the scenes to redirect *consumers* seeking TMS services from their non-directory-subscriber TMS providers of choice to any paying-subscriber TMS providers in the geographic area." *Id.* ¶ 2.55.

These are, at a minimum, plausible allegations of the mass (and ongoing) deception of Washington consumers by TMSTherapyNearMe.com was somehow "protected speech on a matter of public concern" protected by "First Amendment principles." Dkt. 86 at 29:5-30:5. To that end, this Defendant contends, "Nor does the SAC allege TMSTherapyNearMe advertised its services by suggesting Plaintiffs' approval, affiliation, or promotion." Quite clearly, Plaintiffs' allegations against TMSTherapyNearMe specifically center on its directory's false representation that its directory postings for Plaintiffs have been made without their "approval, affiliation, or promotion." And this specious argument fails as a matter of law.

## IV.    CONCLUSION

The court should deny TMSTherapyNearMe.com's Motion to Dismiss.


DATED this <u>12th</u> day of March, 2026.

ROCKE | LAW Group, PLLC

*/s/ Arthur A. Simpson*
Aaron V. Rocke, WSBA No. 31525
Arthur A. Simpson, WSBA No. 44479
Rocke Law Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
Telephone: (206) 652-8670
Fax: (206) 452-5895
Email: aaron@rockelaw.com
Email: arthurs@rockelaw.com
Attorneys for Plaintiffs

*I certify that this memorandum contains 7,641 words, in compliance with the Local Civil Rules.*

RESPONSE TO MOTION TO
DISMISS
- Page 24

ROCKE | LAW Group, PLLC
500 Union St, Suite 909
Seattle, WA 98101
(206) 652-8670

**DECLARATION OF SERVICE**

I sent a copy of the foregoing Response to Defendant's Motion to Dismiss to the following in the manner indicated:

**Via E-mail to:**
Tim J. Billick, WSBA No. 46690
Practus LLP
Email: tim.billick@practus.com
600 First Ave, Ste.102
Seattle, WA 98104
Ph. 206-844-6539

Mark P. Walters WSBA No. 30819
Lowe Graham Jones PLLC
Email: walters@LoweGrahamJones.com
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
Ph. 206-381-3300

on today's date.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my belief.

Signed and DATED this 12th day of March, 2026 in Seattle, Washington.

/s/ Arthur A. Simpson
Arthur A. Simpson, WSBA 44479