UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID PENNER MD PLLC, et al.,

Plaintiffs,

v.

CLEAR TMS+ PLLC, et al.,

Defendants.

CASE NO. C25-5033 BHS

ORDER

THIS MATTER is before the Court on plaintiffs David Penner and Olympia Center for TMS & Psychiatry's ("Penner") and defendants Clear TMS+ and Diana Wilcox's ("Wilcox") motions for summary judgment, Dkts. 57 and 59.

Penner is a psychiatrist who owns and operates a clinic, the Olympia Center for TMS & Psychiatry, in Thurston County. Dkt. 74.[1] His clinic, registered as David Penner MD, PLLC, offers psychiatric treatments and specializes in transcranial magnetic stimulation (TMS). Penner has a registered trademark for "Olympia TMS." *Id.* at 3.

---

[1] Although Penner filed his second amended complaint, Dkt. 74, after each party filed their summary judgment motion, the Court relies on it for the facts. The second amended complaint adds a new defendant, TMSTherapyNearMe.com, and clarifies which claims are asserted against each defendant.

ORDER - 1

Wilcox is a psychiatric mental health nurse practitioner who co-owns another psychiatric clinic in Thurston County, Clear TMS+, PLLC. Dkt. 74 at 3; Dkt. 11 at 1. Clear uses Google Ads to advertise its services. *Id.* at 3. Wilcox entered the keywords "Olympia TMS clinic" to create a Google advertisement for the Clear clinic. *Id.* As a result, sponsored Google advertisements for Clear included Dr. Penner's name. Dkt. 74-1 at 2. Clear additionally engaged TMSTherapyNearMe.com, a paid online directory of TMS service providers, to assist with marketing. Dkt. 74 at 6.

Penner alleges the advertisements infringe on his "Olympia TMS" trademark and mislead patients seeking treatment from Dr. Penner by directing them instead to Clear. *Id.* at 4–5. He asserts TMSTherapy's practices are deceptive, misleading, and violate consumers' privacy by sharing medical information with subscribed providers. *Id.* at 11–12.

Penner brings false designation and false description trademark claims under 15 U.S.C. § 1125 against Wilcox and Clear; Washington consumer protection act (CPA) claims under RCW 19.86.020 against Wilcox, Clear, and TMSTherapy; appropriation of name claims against Clear and TMSTherapy; and a personality rights claim under RCW 63.60.050, .060 against Clear. *Id.* at 13–18.

In her answer to Penner's first amended complaint, Wilcox asserted as an affirmative defense that "Plaintiffs failed to join an indispensable party, Google, Inc., who created the accused advertisements for Clear TMS." Dkt. 43 at 8.

Wilcox moves for summary judgment on Penner's trademark infringement and CPA claims. Dkt. 57. She argues Penner abandoned the Olympia TMS mark, has not

shown its bona fide commercial use, and that no reasonable jury could find her use of the trademark was "likely to cause confusion," as required for a violation of the Lanham Act. *Id.* at 8–12. She contends Penner cannot prove he suffered any damages for his trademark and CPA claims. *Id.* at 20–21.

Penner moves for partial summary judgment on Wilcox's affirmative defense and on the nature of his Olympia TMS trademark. Dkt. 59 at 5. Specifically, he argues he has presented prima facie evidence of the mark's validity and that it is eligible for trademark protection because it is descriptive, not generic. *Id.* at 7–8. He asks the Court to reserve for trial several factual issues raised in Wilcox's motion. *Id.* at 9–10.

The issues are addressed in turn.

## I.   DISCUSSION

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.

On cross-motions, the defendant bears the burden of showing that there is no evidence which supports an element essential of the plaintiff's claim. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). Conversely, the plaintiff "must prove each essential element by undisputed facts." *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 WL 118276, at *2 (N.D. Cal. Mar. 4, 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Either party may defeat summary judgment by showing there is a genuine issue of material fact for trial. *Id.*; *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no contested factual issues, this is ultimately the Court's responsibility to determine. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

To succeed on a trademark infringement claim, a plaintiff must demonstrate (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark causes a likelihood of confusion. *Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1116 (Fed. Cir. 2018).

**A.    Whether Penner abandoned the Olympia TMS mark is a genuine issue of material fact.**

Abandonment is a defense to an infringement claim. 15 U.S.C. § 1115(b)(2). A mark is abandoned through nonuse, as alleged here, when the mark's bona fide use in the ordinary course of trade has been discontinued with intent not to resume. 15 U.S.C. § 1127; Dkt. 57 at 8. The party claiming abandonment bears the initial burden of proof, although nonuse for three consecutive years constitutes prima facie evidence of abandonment. 15 U.S.C. § 1127; *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed. Cir. 1989). "The burden then shifts to the trademark owner to produce evidence that he either used the mark during the statutory period or

ORDER - 4

intended to resume use." *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000). Abandonment is a question of fact. *Id.*

Abandonment must be strictly proven. *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982). Although the Ninth Circuit has yet to decide what standard of proof is required, it has held the "standard for non-use is high" and requires "'*complete* cessation or discontinuance of trademark use.'" *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Electro Source, LLC v. Brandess–Kalt–Aetna Grp., Inc.,* 458 F.3d 931, 936, 938 (9th Cir. 2006)); *see FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (citation modified) ("We have yet to determine . . . whether this high standard of proof requires clear and convincing evidence or a preponderance of the evidence.").

Wilcox argues Penner has unequivocally abandoned the mark since 2021. Dkt. 57 at 8–10. She points to social media posts in which Penner "rebranded" his clinic, and discovery responses in which Penner asserted he ceased using the Olympia TMS mark in 2021. *Id.* (citing Dkt. 58, Billick Decl., Ex. B–D).

Penner responds that he has used the mark continuously and without interruption, since at least August 2020, through his internet domain URL and on his website, olympiatms.com. Dkt. 71 at 9–10 (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999)). He argues he maintained the Olympia TMS mark by "tacking" it onto "Olympia Center for TMS" and "Olympia Center for TMS & Psychiatry." *Id.* at 13 (citing *Bertini v. Apple, Inc.*, 63 F.4th 1373, 1377 (Fed. Cir. 2023)). He contends he corrected the erroneous registration end date in a supplemental discovery

response, and that he is not equitably estopped or otherwise prevented from doing so. *Id.* at 14.

First, Penner is not equitably estopped from correcting the registration end date in a supplemental response. Wilcox neither argues, nor establishes, the elements of equitable estoppel. Dkt. 57 at 11–12; *see, e.g., Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (listing elements of equitable estoppel). Instead, she simply disparages his correction, which changed the registration end date from 2021 to "still in use," as "miraculous[]" and "without any evidence to truthfully do so." Dkt. 57 at 10. Penner is entitled to assert his mark is still in use, notwithstanding his initial, but corrected, discovery response.

Second, Penner sufficiently demonstrates he has continued to use the Olympia TMS mark. Although the Ninth Circuit has acknowledged that domain names like olympiatms.com convey "information as to source," it has not explicitly ruled on whether a mark in a URL constitutes "use" under the Lanham Act. *Brookfield*, 174 F.3d at 1055. *Cf. Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998) (holding that the mere *registration* of domain name is not commercial use unless it is used in conjunction with the actual sale of good or services); *Brookfield*, 174 F.3d at 1051 (same). The Court need not decide this issue based on olympiatms.com alone, however, because Penner has provided other evidence of his continued use of the mark.

Penner rebranded the clinic as "Pristine Mental Health" in 2021 and as "Olympia Center for TMS & Psychiatry" in 2023, Dkts. 58-2, 58-3, but a screenshot of his website

from August 2023 depicts "Olympia TMS & Psychiatry," Dkt. 73-3 at 2.[2] Penner persuasively contends that using the Olympia TMS mark like this constitutes the requisite "tacking." Dkt. 71 at 13.

Tacking occurs when a trademark user makes certain permitted modifications to their mark over time, allowing the trademark owner to "modernize and update their trademarks in response to a changing marketplace." *Bertini*, 63 F.4th at 1377. The party seeking to tack must show that both marks "create the same, continuing commercial impression" such that consumers would consider both the same mark. *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 420, 423 (2015). Although tacking "rarely applies," it is a question of fact "that must ultimately be decided by the jury unless the evidence is so strong that it permits only one conclusion." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1168 (9th Cir. 2013), *aff'd*, *Hana Fin.*, 574 U.S. 418 (2015).

Olympia TMS, Olympia TMS & Psychiatry, and Olympia Center for TMS & Psychiatry all share the terms "Olympia" and "TMS." A reasonable person could conclude that all three marks create the same commercial impression and relate to the same commercial enterprise. Whether Penner continued to use his original mark through tacking raises a genuine dispute that is not resolvable on summary judgment.

Wilcox's argument that Penner did not disclose prior versions of his website during discovery is unavailing. Penner used a public internet archive site to access past versions of olympiatms.com. Dkt. 73 at 3 ("Both Exhibits are available to any member of

---

[2] Penner also provides screenshots from August 2020, Dkt. 73-1, Ex. A, but that does not rebut Wilcox's argument that he abandoned the mark in 2021.

the public who uses the Internet Archive's site, https://waybackmachine.app/"); *cf.* Fed. R. Civ. P. 26(a) (requiring disclosure of documents the disclosing party "has in its possession, custody, or control"). The screenshots are not a "self-serving declaration" that "simply aver[s] a subjective affirmative intent not to abandon." Dkt. 76 at 4 (citing *Imperial Tobacco Ltd., Assignee of Imperial Grp. PLC v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990)) (citation modified). Rather, Penner provides ample evidence, viewed in the light most favorable to him, from which a reasonable person could conclude he did not abandon the Olympia TMS mark.

The Court concludes that Penner's continued use of the mark since 2021 remains a genuine issue of material fact. Wilcox's summary judgment motion on this issue is **DENIED**.

**B.     Olympia TMS mark is descriptive.**

Penner argues that because Olympia TMS is registered, it is presumed valid. Dkt. 59 at 6–7. He also asks the Court to decide, as a matter of law, that the mark is "not generic, but descriptive at a minimum," while reserving for trial whether it has acquired secondary meaning. *Id.* at 8–10. He argues the mark answers the question "'Who are you?' rather than merely describing TMS therapy.'" *Id.* at 9 (citing *Peninsula Cmty. Health Servs. v. Olympic Peninsula Health Servs. PS*, No. C20-5999 BHS, 2022 WL 1014962, at *4 (W.D. Wash. 2022)).

Wilcox argues the mark cannot be presumed valid because it is on the supplemental register. Dkt. 70 at 4. She relies heavily on her abandonment argument and

asserts "Penner is trying to create factual disputes where none exist." *Id.* at 6. She appears to concede, however, that "Olympia TMS Is Descriptive." Dkt. 70 at 4.

A mark is valid is if it is "distinctive of a product's source." *Converse*, 909 F.3d at 1116. "The more distinctive the mark, the more readily it qualifies for the principal register" in the United States Patent and Trademark Office (USPTO). *United States Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 553 (2020). A mark's registration on the principal register constitutes prima facie evidence of its validity. *Id.*; *Brookfield*, 174 F.3d at 1047. On the other hand, registration on the USPTO's supplemental register "accords more modest benefits," announcing "one's use of the designation to others considering a similar mark." *Booking.com*, 591 U.S. at 552.

However, even a mark on the supplemental register, on an unregistered mark, may be valid and protectable if it is either (1) "inherently distinctive" or (2) "descriptive" with "acquired secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992); *OpenAI, Inc. v. Open A.I., Inc.*, 791 F. Supp. 3d 1106, 1118 (N.D. Cal. 2025). Inherently distinctive marks are those whose "intrinsic nature serves to identify a particular source." *Two Pesos*, 505 U.S. at 768. Descriptive marks acquire distinctiveness through secondary meaning when, "in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself." *Converse*, 909 F.3d at 1116 (citation modified). Factors relevant to whether a mark has acquired secondary meaning include: (1) association of the mark with a particular source by actual purchasers; (2) length, degree, and exclusivity of use; (3) amount and manner of

advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage of the product embodying the mark. *Id.* at 1120.

Including a geographic location in a mark does not render it automatically descriptive. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 871 (9th Cir. 2002). What matters instead is whether "consumers would reasonably believe that the term is being used geographically." *Id.* And a geographically descriptive mark still needs secondary meaning to be distinctive. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1113, 1116 (N.D. Cal. 2010); *Weintraub v. Sotheby's Int'l Realty, Inc.*, No. 2:18-CV-6922-AB, 2018 WL 6421687, at *3 (C.D. Cal. 2018).

In contrast, a generic term "cannot become a trademark under any circumstances." *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999) (citation modified). Courts discern whether a term is generic by asking the "who-are-you/what-are-you" test: "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you?'" *Id.* (citation modified). "'The critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question.'" *In re Cordua Restaurants, Inc.*, 823 F.3d 594, 599 (Fed. Cir. 2016) (quoting *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989–90 (Fed. Cir. 1986)). "Evidence of the public's understanding of the mark may be obtained from any competent source, such as consumer surveys, dictionaries, newspapers and other

publications." *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 965 (Fed. Cir. 2015) (citation modified).

Trademark validity is "an intensely factual issue," in which the plaintiff bears the ultimate burden of proof. *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citation modified).

Here, Penner has not shown prima facie evidence of validity. He concedes the mark is registered on the supplemental register and that his motion "mistakenly suggested" the mark is on the principal register. Dkt. 75 at 5 n.1. The mark's validity therefore depends on its distinctiveness.

Penner makes little effort to argue or prove that Olympia TMS is not generic. His only explanation is that it answers the question "'Who are you?' rather than merely describing TMS therapy.'" Dkt. 59 at 9. He draws on this Court's ruling on a similar issue in *Peninsula Cmty. Health Servs.* But the plaintiff there presented evidence of the mark's non-generic nature. *Peninsula Cmty. Health Servs*, No. C20-5999 BHS, 2022 WL 1014962, at *4 (W.D. Wash. 2022). He does not provide any supporting evidence of the public's understanding of Olympia TMS. *Princeton Vanguard, LLC*, 786 F.3d at 965. However, Wilcox does not argue the mark is generic and appears to concede that "Olympia TMS Is Descriptive." Dkt. 70 at 4.

The Olympia TMS mark is descriptive. Whether it is distinctive through an acquired secondary meaning depends on several fact-intensive factors for which the Court does not have sufficient evidence or briefing at this stage. Penner's motion for summary judgment on this issue is **GRANTED**.

## C.    The likelihood of confusion is a factual dispute.

Wilcox contends no reasonable jury could find her use of the Olympia TMS mark likely caused consumers confusion. Dkt. 57 at 12–20. She insists the mark is weak, no actual confusion exists, Clear was clearly labeled in marketing and advertising campaigns, and that consumers are sophisticated, and unlikely to spend "thousands of dollars at the wrong business." *Id.* at 18.

Penner asks the Court to reserve this issue for trial but nonetheless argues the facts weigh in his favor. Dkt. 59 at 10–11; Dkt. 71 at 15–16. He argues Wilcox used Olympia TMS to advertise the same service—TMS therapy—in the same marketing channels, leading to confusion among consumers. Dkt. 71 at 16–18.

Courts apply the eight *Sleekcraft* factors to assess the likelihood of consumer confusion among similar trademarks:

> (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030–31 (9th Cir. 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.3d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)). "This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts" for analysis. *Id.* (internal quotations omitted).

ORDER - 12

"Likelihood of confusion is a factual determination," and courts often find likelihood of confusion is best determined by the factfinder. *Id.* at 1031. The Ninth Circuit has "cautioned that district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012) (citation modified).

The parties spend much time disagreeing with each other on the *Sleekcraft* factors. Their extensive briefing indicates that this is an issue inappropriate for summary judgment, just as the Ninth Circuit expressly cautioned in *Rearden*. There is ample dispute about whether consumers seeking psychiatric services would have been confused by Wilcox's use of the Olympia TMS mark. The Court agrees with Penner that this is best left for trial.

Wilcox's motion on this issue is accordingly **DENIED**.

## D.    **Penner's damages constitute a factual dispute.**

Wilcox argues Penner's claimed damages for trademark infringement and the CPA violation are "based solely on speculative and irrelevant evidence." Dkt. 57 at 21. She contends Penner's expert misapplies the concept of an advertisement "conversion rate" to inflate Penner's claimed damages. *Id.* at 22 (citing Dkt. 58, Ex. P, Malaga Expert Report). Her own rebuttal expert claims to have been "mystified" by Penner's claims. *Id.* at 23 (citing Dkt. 58, Ex. Q, Kent Rebuttal Report). She argues that for the personality rights claim, Penner is limited to five infractions because he only provides evidence of

five advertisements that use his name. *Id.* at 28–29. Finally, Wilcox asks the Court to conclude on summary judgment that any alleged infringement was not willful. *Id.* at 20. She asserts she did not intentionally use the mark and does not understand how Penner's name appeared in Clear's advertisements. *Id.* (citing Dkt. 11, Wilcox Decl.; Dkt. 58-8, Wilcox Dep. Tr.).

Penner responds, correctly, that the damages amount is an "issue for the jury, and not for this Court on summary judgment." Dkt. 71 at 1–2.

Trademark remedies are guided by tort law principes, and generally, damages must be established with reasonable certainty. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). The defendant's intent "is relevant evidence on the issue of . . . damages and the amount." *Id.* at 1405; *see Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (the Lanham Act allows for significant statutory damages where the defendant's infringement was willful).

Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark, *id.*, or "willfully blinded themselves to facts that should have put them on notice that they were . . . infringing" the plaintiff's trademark, *Atari Interactive, Inc. v. Redbubble, Inc.*, 546 F. Supp. 3d 883, 886 (N.D. Cal. 2021), *aff'd in part*, No. 21-17062, 2023 WL 4704891 (9th Cir. 2023); *see Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) (taking active steps to avoid acquiring knowledge of the infringement constitutes willful blindness).

Wilcox challenges Penner's damages calculation, while acknowledging he does have "potential evidence of infringing advertisements." Dkt. 57 at 21. The Court determines Penner has sufficient support for his claim that Wilcox's use of the mark injured him. The Court cannot conclude that he is not entitled to damages as a matter of law. *See, e.g., Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1213–14 (S.D. Cal. 2016); *JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1054 (C.D. Cal. 2021).

Whether Wilcox willfully used the Olympia TMS mark is also a factual dispute left for the jury. Wilcox acknowledges she used the keywords "Olympia TMS clinic" while creating the advertisement, but she claims she did not know it was "allegedly trademarked." Dkt. 11 at 3. She further testified in her deposition that she included "Olympia Center for TMS" as a matching keyword to Clear's advertisement "[b]ecause Google kept prompting it" and that she "didn't understand how . . . Dr. Penner's name" appeared there. Dkt. 58-8 at 32. Her business partner John Tanasse asserts that Wilcox "had little understanding of" Google's advertising services. Dkt. 10 at 2. She asserts she removed all Google advertising in January 2025, when she learned of any potential for trademark infringement. Dkt. 11 at 3; Dkt. 58-8 at 27.

At a minimum, Wilcox's conduct was not willfully blind. No reasonable jury could conclude that she "took active steps to avoid acquiring knowledge" of the infringement. *Luvdarts*, 710 F.3d at 1073. However, viewing her testimony that she added the "Olympia Center for TMS" keyword to the advertisement in the light most favorable to Penner, a reasonable jury could find that she knowingly and intentionally

ORDER - 15

infringed on the trademark. Accordingly, the Court cannot decide as a matter of law that she did not act willfully.

Wilcox's motion on damages is **DENIED**.

**E.      Wilcox no longer asserts that Google is indispensable to this suit.**

Wilcox no longer asserts that Google is an indispensable party as an affirmative defense. *See* Dkt. 48. She does "not maintain that Google is indispensable for Penner's claim of direct infringement." Dkt. 70 at 4. Penner's motion on Wilcox's affirmative defense is **DENIED as moot**.

## II.   ORDER

Wilcox's motion for summary judgment, Dkt. 57, is **DENIED**.

Penner's cross-motion for partial summary judgment, Dkt. 59, is **GRANTED in part** as to the mark's descriptiveness.

IT IS SO ORDERED.

Dated this 17th day of April, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 16